IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAULA GABRIEL,<br><br>   Plaintiff,<br><br>  v.<br><br>XYLEM INC. and XYLEM WATER SOLUTIONS ZELIENOPLE LLC<br><br>   Defendants. | CIVIL DIVISION<br><br>No. 2:21-cv-00687-PLD |

**DEFENDANTS' VERIFIED RESPONSE TO PLAINTIFF PAULA GABRIEL'S MOTION TO VOLUNTARILY DISMISS HER AMENDED COMPLAINT**

Defendants Xylem Inc. and Xylem Water Solutions Zelienople LLC (collectively "Xylem") submit this Response to Plaintiff Paula Gabriel's Motion to Voluntarily Dismiss Her Amended Complaint.

Defendants are victims in this lawsuit. Careful investigation by counsel, company information systems personnel, and a retained computer forensics consultant indicate that Paula Gabriel (or someone for her) fabricated evidence and the allegations in this case, specifically targeting Gabriel's former managers after Gabriel's employment terminated. Xylem and its managers are concerned about the risk to character, profession, and reputation that Gabriel's claims may cause. It is of limited solace that Gabriel, faced with evidence of her wrongdoing, filed a stipulation for dismissal of the individual Defendants and now seeks to dismiss the entire case with prejudice. Gabriel's false and damaging allegations remain in the public record.

This lawsuit should certainly be dismissed with prejudice, subject to certain proposed conditions or requirements to limit the effect of those unproved claims in the public record. Xylem requests, as a conditions of dismissal, that 1) the names of the never-served former individual

1

Defendants (managers of Xylem) be permanently removed from the case caption so that their reputations can be protected to some degree; and 2) the Court's order of dismissal make clear that the dismissal is not due to any payment or promise of any kind, but a voluntary decision by Gabriel to dismiss this case after defense counsel presented evidence to Gabriel's attorneys that Gabriel produced fabricated evidence in this litigation.

## I.     BACKGROUND

**A.     Gabriel's Complaint Presents False Allegations of Sexual Harassment and Retaliation.**

Gabriel filed her initial Complaint against Xylem Inc. on May 21, 2021, so this wrongful litigation has been pending for nearly 10 months. [Dkt. 1]. In her Complaint, Gabriel detailed alleged harassment attributed to her supervisor Michael Craig and additional information in relation to alleged complaints made to Craig's supervisor, Sean Petraitis, which Gabriel maintained served the basis of a retaliation claim. [*Id.*]. Xylem Inc. answered Gabriel's Complaint on July 23, 2021, denying the allegations of harassment and retaliation. [Dkts. 1, 8]. On October 18, 2021, Gabriel filed her Amended Complaint adding Xylem Water Solutions Zelienople LLC (her actual previous employer) and individuals (and Xylem Water Solutions Zelienople LLC managers) Michael Craig and Sean Petraitis as Defendants. [Dkt. 21]. Xylem Water Solutions Zelienople LLC voluntarily answered Gabriel's Amended Complaint on October 18, 2021, denying Gabriel's allegations. [Dkt. 24]. At the time Gabriel filed her Complaint and Amended Complaint, Gabriel was represented by Bracken Law Firm, LLC. Gabriel never served Craig or Petraitis with a copy of the Amended Complaint, but all Defendants are concerned about the damaging and spurious claims that Gabriel has put into the public record.

**B.     Gabriel Forced Xylem To Conduct An Electronic Forensics Investigation to Protect Defendants After Gabriel Produced Fraudulent Emails In Discovery.**

On September 1, 2021, Xylem served interrogatories and requests for production of documents on Gabriel. Gabriel served written responses and produced responsive documents on October 5, 2021. In response to Xylem's document requests, Gabriel produced surprising "emails" never seen before by Defendants (including the individual Defendants and Xylem managers who allegedly sent and received them).

At first blush, the emails, all of which were produced by Gabriel in ".pdf" format, appeared to support her Complaint allegations. Careful investigation, however, revealed suspicious anomalies and inconsistencies amongst the emails:

- One of the emails purportedly from Craig contained no footer, even though the others show "Sent from my iPhone."

- Some of the emails contain proper capitalization and punctuation, while others do not. For example, compare:

    > But we can have our party in any hotel you choose. You look good today by the way. Are we ever going to see your husband?

    > but I will miss you though

- The emails allegedly to Petraitis contains an extra >

    > To: Petraitis, Sean - Xylem <Sean.Petraitis@Xyleminc.com>>

- Some emails are to "Paula," while others are to "Paula Gabriel." Some also fail to contain a space between "To: Paula."

    > Craig, Michael - Xylem <Michael.Craig@xyleminc.com>
    > To: Paula <paulagabriel226@gmail.com>
    >
    > Craig, Michael - Xylem <Michael.Craig@xyleminc.com>
    > To: paula gabriel <paulagabriel226@gmail.com>
    >
    > Craig, Michael - Xylem <Michael.Craig@xyleminc.com>
    > To:paula gabriel <paulagabriel226@gmail.com>

In response to receiving Gabriel's production, Xylem conducted a forensic review of its servers to determine whether any of the alleged emails were sent and/or received in its system.

Specifically, Xylem did an analysis of all emails sent to and received by paulagabriel226@gmail.com. The results were that none of the alleged emails were ever sent from or received by the Xylem server.

Moreover, Xylem, through counsel and at significant cost, engaged a third-party computer forensics consultant to perform an in-depth forensic analysis of Craig's laptop, iPhone and corporate mailbox harvested from Microsoft Exchange. That forensic analysis did not uncover the alleged emails produced by Gabriel and further confirmed anomalies in the documents produced by Gabriel, all supporting the conclusion that Gabriel fabricated the never-sent emails for her own self-interest and gain.

**C.   Gabriel Sought To Voluntarily Dismiss This Lawsuit Only After Xylem's Investigation Uncovered Her Bad Faith Conduct.**

The results of Xylem's investigation, including the preliminary report of Xylem's third-party computer forensics consultant, were shared with Gabriel's former counsel, Mr. Bracken, on November 9, 2021.[1] Specifically, the undersigned counsel for Xylem informed Mr. Bracken that the emails produced by Gabriel were believed to be fraudulent, including the basis for this conclusion. Xylem also served a supplemental answer to Gabriel's Interrogatory No. 1 that sought a description of Defendants' search for electronic documents, answering in relevant part:

> Xylem states its IT department conducted a search of its entire mail system (all email accounts) for all emails sent to or received from "paulagabriel226@gmail.com." The results of that search are being produced herein (*see* excel documents labelled "message_ tracking_ results_ paula_ as_ sender.xlsx" and "message_tracking_results_paula_as_receipient.xls"). There is no record of any inbound message from "paulagabriel226@gmail.com" to Sean Petraitis' email, on January 30, 2020, or any other date. Further review of Mr. Petraitis' mailbox confirmed there are no messages from "paulagabriel226@gmail.com." Xylem further states that the alleged email to Petraitis produced by Gabriel (GABRIEL 000010) contains an anomaly (an extra > at the end of Mr. Petraitis' email; *i.e.*, "<Sean.Petraitis@Xyleminc.com>>").

---

[1] Xylem does not contend that Mr. Bracken was aware that the emails manufactured by Plaintiff were fraudulent at the time of production.

> Xylem, through the undersigned counsel, also engaged an electronic discovery & digital forensics consultant to analyze the contents of Mr. Craig's Xylem-issued laptop computer, iPhone, and corporate mailbox harvested from Microsoft Exchange. The consultant used the following non case-sensitive key phrases for her examination: "we can have our party in any hotel"; "you look good today by the way"; "are we ever going to see your husband"; "why don't you be good with me too girl"; "but i will miss you though"; "sent from my iphone"; and "paulagabriel226". The consultant also conducted a search of Craig's email archives for Gabriel's personal email address "paulagabriel226@gmail.com." The consultant did not locate the email messages produced by Gabriel and allegedly sent by Craig to Gabriel's personal email address (GABRIEL 000001, GABRIEL 000004, GABRIEL 000007). The examination of the iPhone did reveal 145 text messages between Craig and Gabriel, which are being produced herein. Those text messages are of a business nature, general information, or common pleasantries.

After receiving Xylem's supplemental answer, Xylem's message tracking results, and the preliminary report of Xylem's consultant, Mr. Bracken filed his Motion to Withdraw as Gabriel's counsel on November 16, 2021. [Dkt. 26]. That same day, the Law Offices of Joel Sansone entered multiple appearances on behalf of Gabriel. [Dkts. 27-29].

The undersigned counsel scheduled and had a call with Gabriel's counsel, Elizabeth Tuttle of the Law Offices of Joel Sansone, on November 17, 2021. During that call, the undersigned informed Ms. Tuttle of the same grave concerns previously shared with Mr. Bracken: that Gabriel had produced fraudulent emails in the course of discovery.[2] Though requested to do so, thereafter, Gabriel never submitted any devices for further investigation, never produced native copies of the doctored emails, and never provided any explanation concerning the inconsistencies identified by the undersigned and Xylem's forensics consultant. Months of communications between the undersigned and Gabriel's counsel ensued, but ultimately, Gabriel declined to correct the disparaging allegations she made in the public record and accordingly discussions concerning potential agreed dismissal broke down.

---

[2] Xylem does not contend that Ms. Tuttle was aware that the emails manufactured by Plaintiff were fraudulent at the time she started representing Plaintiff.

On February 25, 2022, Gabriel voluntarily dismissed her claims against Craig and Petraitis. [Dkt. 36]. Craig and Petraitis offered Gabriel nothing in exchange for the dismissal. Gabriel then filed her Motion to Voluntarily Dismiss her Amended Complaint against Xylem. [Dkt. 37].

## II.     LEGAL AUTHORITY & STATEMENT OF POSITION

Xylem requests that two actions be taken in relation to Gabriel's request that this lawsuit—and her unsupported claims—be dismissed with prejudice. First, Xylem requests that the court caption be corrected to delete the names of the individual Defendants who were never served and whose reputations are at risk due to the nature of Gabriel's claims. Second, Xylem recognizes that it has a basis to seek attorney fees and costs from Gabriel in this case. However, with a goal of ensuring that the public record properly characterize this case, Xylem requests that the Court state in its order of dismissal with prejudice that 1) the dismissal is not due to settlement and 2) the motion for dismissal was filed after counsel for the Xylem Defendants reportedly presented evidence to Plaintiff's counsel that Plaintiff produced and/or fabricated false evidence in this litigation.

**A.     The Necessary and Fair Deletion of the Dismissed Individual Defendants from the Case Caption under Rule 41(a)(2).**

Suit against former individual Defendants Craig and Petraitis should have never been brought. Neither Craig nor Petraitis were ever served with Gabriel's Amended Complaint. Yet a simple Google search (such as "Michael Craig Xylem") brings up information concerning this case, and Gabriel's allegations. This can have long-lasting negative effects on Craig and Petraitis. One can envision a scenario in which a future employer conducts a search only to find that Craig was accused of sexual harassment in his role as supervisor. The possibility that a future employer thereafter decides to not hire Craig for this reason is high. In the court of public opinion, there is no "innocent until proven guilty," nor will laypersons appreciate the actions of Gabriel in

voluntarily dismissing the claims against Craig and Petraitis. Rather, the only way to potentially mitigate the damage done by Gabriel's conduct is to remove Craig and Petraitis from the case caption altogether.

**B.      Entitlement to Costs and Fees Under Federal Rule of Civil Procedure 41(a)(2) and Request for Context in the Court's Dismissal Order**

Gabriel seeks to voluntarily dismiss her Amended Complaint pursuant to Federal Rule of Civil Procedure 41(a)(2). [Dkt. 37]. Because Xylem has already answered Gabriel's Amended Complaint, this action can only be dismissed "by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2); *Carroll v. E One Inc.*, 893 F.3d 139, 146 (3d Cir. 2018). In considering the terms it deems proper, this Court is afforded a "broad grant of discretion," including the "ability to attach conditions to Rule 41(a)(2) dismissal orders. *Carroll*, 893 F.3d at 146.

This Court has the ability to award attorneys' fees and costs as a condition of a Rule 41(a)(2) dismissal. *Id.* at 146-47. Fees and costs are frequently awarded when the dismissal is without prejudice and when the dismissal is with prejudice, "exceptional circumstances may sometimes warrant granting such an award." *Id.* at 147-49. Exceptional circumstances include an abuse of the judicial process or bad faith conduct. *Carroll v. E-One, Inc.*, No. 15-CV-0562, 2017 WL 1508987, at *2 (E.D. Pa. Apr. 26, 2017), *aff'd sub nom.* 893 F.3d 139 (3d Cir. 2018). "'Bad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.'" *Id.* (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)). Moreover, "attorneys' fees and costs as a term of a Rule 41(a)(2) dismissal may be appropriate where such fees and costs were unnecessarily incurred." *Carroll*, 893 F.3d at 147.

Here, Gabriel's bad faith conduct of manufacturing and producing fraudulent emails to support her claims, causing Xylem to incur unnecessary fees and costs, would support an award

7

of fees and costs as a condition of dismissal. Indeed, the United States Supreme Court has held that "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (internal citations and quotations omitted). "In this regard, if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party." *Id; see also Indiezone, Inc. v. Rooke*, No. 13-CV-04280-VC, 2014 WL 4354122, at *3 (N.D. Cal. Sept. 2, 2014), *aff'd*, 720 F. App'x 333 (9th Cir. 2017) (submission of misleading and false declarations and fraudulent documents constituted bad faith and supported an award of fees and costs as a sanction); *Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425, 444 (S.D.N.Y. 2002), *aff'd*, 81 F. App'x 396 (2d Cir. 2003) (the generation of fraudulent documents was "intentional bad faith conduct.").

Gabriel's conduct in this case goes beyond acceptable litigation strategy and tactics. Gabriel injected into the public record knowingly false and damaging allegations of sexual harassment against not only Xylem (innocent), but two individuals (also innocent). These allegations alone are professionally and personally damaging. Gabriel then took it one step further: she proceeded with the litigation for nearly 10 months and produced fabricated evidence to support her false allegations. There can be no question that the manufacturing of fraudulent evidence constitutes bad faith conduct. *Pope v. Fed. Exp. Corp.*, 138 F.R.D. 675 (W.D. Mo. 1990), *aff'd in relevant part, vacated in part*, 974 F.2d 982 (8th Cir. 1992), is instructive in this regard.

In *Pope*, similar to this case, the plaintiff brought allegations of sexual harassment against her former employer and her supervisor. *Id.* at 676. In support of her allegations, the plaintiff in *Pope* produced a document that contained what appeared to be a handwritten note from her supervisor, which read:

>Carol,
>
>you "feel" good!
>
>Danny

*Id.* at 677. The words, including the peculiar pattern of underscoring and the quotation marks, appeared on the lower half of a page at a slight angle which did not align with the computer-generated numbers and text which were printed on the top third of the page produced by the plaintiff. *Id.* Accordingly, and similar to the present case, the defendants suspected that the document had been manufactured by the plaintiff. *Id.* Although the plaintiff denied manufacturing the document, an expert document examiner confirmed the defendants suspicions and found that no original writing of the message produced by the plaintiff ever existed. *Id.* 678-79. After dismissing the plaintiff's complaint with prejudice, the court awarded attorneys' fees and costs to defendants. *Id.* at 682-83. The *Pope* court's rationale is particularly pertinent to this case:

> [T]he severity of the misdeed here compels such harshness. The manufactured document would have been the linchpin of plaintiff's case. Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.
>
> In this instance, no simple mistake has occurred. . . . Clear and convincing evidence has been presented that plaintiff knowingly advanced a document which she knew was not what she represented it to be, and that she relied upon it in her pleadings. She repeatedly attempted to promote the use of the document on her behalf in this litigation, even though she knew it was manufactured. She acted in bad faith and with improper purpose in a manner which jeopardizes the integrity of the judicial system. Accordingly, sanctions . . . may be awarded to defendants at plaintiff's expense.

*Id.* at 683.[3]

---

[3] In *Pope*, the court awarded sanctions pursuant to Rules of Civil Procedure 11, 26(g), 41(b) and the court's inherent equitable power to impose sanctions. Like in *Pope*, the Court here has an inherent power to impose sanctions because Plaintiff has engaged in bad faith conduct.

As in *Pope*, Gabriel's production of fraudulent emails was no mistake. Had Xylem not undertaken extensive efforts to prove the falsity of the documents produced by Gabriel, these emails, like in *Pope*, would have been the linchpin of Gabriel's case. It was only when Gabriel was caught "red-handed" did she attempt to quietly walk away from this case by seeking to dismiss her Amended Complaint.

Xylem does not want to waste more of its resources in an effort to collect attorney fees and costs in this action that may be difficult or impossible to collect from Gabriel. However, the record should be very clear about what happened here. Xylem therefore requests the following be included in the Court's order regarding the dismissal of this case with prejudice:

> Plaintiff has moved for the dismissal with prejudice of her claims against the Defendants. Defendants' counsel has verified to this Court that no settlement -- public or private -- has occurred. The dismissal is not due to any payment or promise of any kind, but a voluntary decision by Plaintiff to dismiss this case. Plaintiff's motion for dismissal was filed after counsel for the Xylem Defendants reportedly presented evidence to Plaintiff's counsel that Plaintiff produced and/or fabricated false evidence in this litigation.

Craig and Petraitis have had to endure the potential of reputational harm and questioning by their employer (and potential future employers, colleagues and family), and Xylem had to expend significant financial resources to rebut Gabriel's allegations. In light of this, and given the duration of this litigation and the Gabriel's allegations, the interests of justice and fairness are served by the inclusion of the above context in the Court's dismissal order.

### III.  CONCLUSION

The claims in this lawsuit are without factual or legal basis.  Gabriel was not subjected to any sexual harassment, any sexual advances, or any sex-based comments by anyone at Xylem and she did not report any sexual harassment claims to anyone at Xylem.

For the reasons detailed above, Xylem requests, as a condition of dismissal with prejudice, that the names of the now-dismissed (and never served) individual Defendants Michael Craig and Sean Petraitis be removed from the case caption and that the Court include the language presented above in its final order.

Xylem requests all other relief that the Court deems appropriate.

Respectfully submitted,

*s/ Kathleen M. Anderson*

Kathleen M. Anderson
**BARNES & THORNBURG, LLP**
888 South Harrison Street, Suite 600
Fort Wayne, IN  46802
Tel:     (260) 425-4657
Fax:    (260) 424-8316
Email:  kathleen.anderson@btlaw.com

Justine Farris-Niehaus
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, Indiana  46204
Telephone:    (317) 261-7855
Facsimile:    (317) 231-7433
Email:         justine.farris@btlaw.com

*Attorneys for Defendants Xylem Inc. and Xylem Water Solutions Zelienople LLC*

11

## **VERIFICATION**

I affirm to the best of my knowledge that the facts set forth in the foregoing Response are true and accurate.

        Respectfully submitted,

        *s/ Kathleen M. Anderson*

        Kathleen M. Anderson
        **BARNES & THORNBURG, LLP**